CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

March 22, 2024
LAURA A. AUSTIN, CLERK
BY: /s/T. Taylor
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | |
|---|---|
| WESLEY REX JONES,<br>    Plaintiff, | Civil Action No. 7:21-cv-00541 |
| v. | MEMORANDUM OPINION & ORDER |
| SHELBY HARRELL, et al.,<br>    Defendants. | By:    Joel C. Hoppe<br>        United States Magistrate Judge |

In October 2021, Plaintiff Wesley Rex Jones, a Virginia inmate appearing pro se, filed this suit alleging that three Virginia Department of Corrections ("VDOC") employees violated his rights under the First and Fourteenth Amendments to the U.S. Constitution, 42 U.S.C. § 1983. Compl., ECF No. 1. Jones now seeks to amend his complaint by adding a new § 1983 claim against a fourth VDOC employee, Ms. Bateman, based on events that occurred in April and May of 2022.[1] *See* Pl.'s Mot. to Amend or Adjust Suit 1–3, 6, ECF No. 26 ("Pl.'s Mot. to Amend"); Fed. R. Civ. P. 15(a)(2), (d). The matter is before me by the parties' consent under 28 U.S.C. § 636(c). ECF No. 22. I find that Jones's proposed amendment is futile because the facts alleged do not state a plausible retaliatory-transfer claim against Ms. Bateman. Accordingly, his motion to amend, ECF No. 26, is denied with prejudice.

I. Legal Framework

"On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Under Rule 15(d), a court may grant a plaintiff leave to "add new defendants" or new claims to an operative complaint when the proposed supplemental pleading relies "in good part on transactions, occurrences, [or] events"

---

[1] The Office of the Attorney General is representing the three original defendants. ECF No. 11. Counsel did not respond to Jones's motion to add a claim against Ms. Bateman. *See* W.D. Va. Civ. R. 11(c)(1).

1

that happened after the plaintiff filed that complaint. *Rush v. Am. Home Mortg., Inc.*, Civ. No. 07-854, 2009 WL 2591342, at *2 (D. Md. Aug. 19, 2009) (quoting *Griffin v. Cnty. Sch. Bd. of Prince Edward Cnty.*, 377 U.S. 218, 226 (1964)); *see also Ohio Valley Env't Coal. v. U.S. Army Corps of Eng'rs*, 243 F.R.D. 253, 255 (S.D. W. Va. 2007) ("In short, Rule 15(d) allows a party to bring the case up to date."). "The court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), and to the extent consistent with other procedural rules. *See Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (noting that the district court "may deny leave . . . if the proposed amended complaint fails to satisfy the requirements of the federal rules"); *Franks v. Ross*, 313 F.3d 184, 198 & n.15 (4th Cir. 2002) (noting that the standards courts apply "in ruling on a motion to amend" under Rule 15(a)(2) and "on a motion to supplement" under Rule 15(d) "are nearly identical" and that "leave should be freely granted" in either situation).

"In fact, such leave 'should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" *Franks*, 313 F.3d at 193 (Rule 15(d)) (emphasis omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (Rule 15(a)(2))). "Prejudice is the weightiest factor, [and] the absence thereof, 'though not alone determinative, will normally warrant granting leave to amend'" or supplement. *Oliver v. Dep't of Pub. Safety & Corr. Servs.*, 350 F. Supp. 3d 340, 346 (D. Md. 2018) (quoting *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980)), *aff'd sub nom. Oliver v. Bartholomew*, 785 F. App'x 166 (4th Cir. 2019) (per curiam). "An amendment is futile when the proposed amended complaint does not state a claim" upon which relief can be granted. *Id.* (citing *Katyle*, 637 F.3d at 471). To clear this threshold, a complaint must contain well-pleaded factual content, accepted as true and viewed in

the plaintiff's favor, "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" under the governing law. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).

## II. Background[2]

In 1999, Jones was convicted on multiple counts of forcible sodomy, aggravated sexual battery, and taking indecent liberties with a child. *See, e.g.*, *Commonwealth v. Wesley R. Jones*, Nos. CR98-104-00, CR98-104-01, CR98-104-11, 98-282-02 (Campbell Cnty. Cir. Ct. Mar. 24, 1999). Beginning in August 2019, he was incarcerated at Green Rock Correctional Center ("GRCC"), a VDOC facility in Chatham, Virginia. *See* Pl.'s Mot. to Amend 2.

In October 2021, while housed at GRCC, Jones filed a § 1983 complaint alleging that GRCC employees Shelby Harrell, Heather Boyd, and Jeffrey Dillman violated Jones's rights under the First and Fourteenth Amendments by placing him on a vague and overly broad Individualized Rehabilitation Plan and arbitrarily applying it to confiscate photographs he had ordered from a VDOC-approved vendor. *See* Compl. 1, 3–7. Under "Relief Sought," Jones asked that he "not suffer reprisal due to this action by any [VDOC] employee." Compl. 12; *accord* Pl.'s Mot. to Amend 2–3 ("As part of the [§] 1983 suit, under relief [s]ought, Jones indicated that no action be taken against him as reprisal for the suit by anyone at Green Rock Correctional

---

[2] Jones did not attach a proposed supplemental pleading to his motion. *Cf. Estrella v. Wells Fargo Bank, N.A.*, 497 F. App'x 361, 362 (4th Cir. 2012) (per curiam) (noting that a district court "must grant leave to amend 'when justice so requires,'" Fed. R. Civ. P. 15(a)(2), and does not abuse its discretion in denying such leave when the plaintiff "fails to provide . . . any proposed amended complaint or other indication of the amendments he wishes to make"). Accordingly, the facts set out below come from Jones's motion for leave to amend, ECF No. 26, and his original complaint, ECF No. 1. All well-pleaded factual allegations and reasonable inferences drawn therefrom are presented as true. *See Katyle*, 637 F.3d at 466. The Court also takes judicial notice of Jones's underlying criminal convictions and other undisputed facts that are publicly available on official state-government websites. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *Centre L. & Consulting v. Axiom Res. Mgmt.*, 456 F. Supp. 3d 765, 767 n.1 (E.D. Va. 2020).

Center."). Jones explains that he "included the no retaliation clause in his [§] 1983 suit because it is well known among the inmates that when you sue [V]DOC, you get transferred around as a form of punishment." Pl.'s Mot. to Amend 5. Jones was transferred to Greensville Correctional Center ("GCC") on May 17, 2022. *Id.* at 2. GCC is in Jarrett, Virginia. *See id.* at 8.

*

Jones's proposed claim against Ms. Bateman arises out of her role in having Jones transferred out of GRCC in the spring of 2022. *See id.* at 1–2, 6. Ms. Bateman was the Chief of Housing and Programs at GRCC during this time, *id.* at 6, and she submitted the paperwork that initiated the transfer process, *id.* at 1.

Jones's transfer was the culmination of a series of events that began on April 11, 2022. *See id.* at 1–2, 6. That evening, "Jones was placed in [s]egregation having no idea of why." *Id.* at 1–2. Jones spoke to Ms. Bateman the next day, at which point she explained that "she was going to start paperwork for Jones's transfer. She also told Jones he was under investigation for a past action." *Id.* at 3. On April 14, Jones met with Ms. Bateman and Assistant Warden Coleman. *Id.* "Jones asked why he was being transferred" considering he was already "well-established" at GRCC and had been charge-free for the past six years. *Id.* Ms. Bateman explained that "it was procedure" to transfer Jones because Daniel Cuneo, "one of the alleged victims[] of [Jones's] crime," was now housed at GRCC. *See id.* at 1, 3. She told Jones that he "was not being punished." *Id.* at 3. Jones remained in segregation for several weeks and "was treated as anyone in [segregation] under punishment." *Id.* at 4. On April 26, "Ms. Bateman informed Jones that [VDOC officials in] Richmond had approved his transfer." *Id.* at 2. He was transferred to GCC on May 17, 2022. *Id.* GRCC and GCC are "the same level" prison, but it takes "almost three hours one way" to travel between them. *Id.* at 5.

Jones and Mr. Cuneo saw each other in the B-1 pod on the evening of April 11, 2022. *See id.* at 2, 6. The two men did not speak, and Jones did not realize that Mr. Cuneo was one of his victims; he "figured [Mr. Cuneo] was someone he knew by sight from another facility and let it be." *Id.* at 2. Mr. Cuneo apparently "recognized Jones[,] but [he] did not speak to him nor did he act defensively or frightened." *Id.* Less than an hour later, "Jones was packed up and . . . moved" to segregation. *Id.* There is no indication that Ms. Bateman saw Jones and Mr. Cuneo together, or that she played any role in Jones being moved to segregation on April 11.

Jones "believe[s] that Ms. Bateman used the incident with Daniel Cuneo as a means of punishing Jones for" filing this § 1983 suit against other GRCC staff members. *See id.* at 6. Shortly before filing his motion to amend, for example, Jones learned "there is no policy stating that a victim of a person[']s crime has priority over the person" when prison officials make housing decisions. *See id.* at 3. "Ms. Bateman lied to [him] about [a] procedure dictating that the victim had priority." *Id.* at 5. Moreover, VDOC already had a procedure giving victims "the ability to avoid anyone they believe[d] would harm them." *Id.* at 3–4. Victims can simply put the person's "name on an enemy list or keep sep[a]rate order" so they will not be housed with the person. *Id.* Jones alleges that Mr. Cuneo "knew Jones was in prison" in April 2022, and he also knew that GRCC "is the closest" prison to the part of Virginia where he and Jones are both from. *See id.* Yet, Mr. Cuneo "did not place Jones on his enemy list or get a keep separate order while he was in [VDOC] Receiving and Classification. If he had, [Mr. Cuneo] would not have been sent to Green Rock because Jones was already there." *Id.* Thus, Jones believes that Ms. Bateman initiated his transfer out of GRCC to punish him for filing this lawsuit, and not because she was following VDOC procedure. *See id.* at 6.

"Due to the transfer[,] Jones has a lot of his personal property missing as it was not sent to Green[s]ville from Green Rock." *Id.* at 5. Two GCC staff also confiscated books and photos that Jones had been allowed to have in his possession at GRCC. *Id.* at 5–6. His elderly mother must travel a longer distance to visit him because GCC is "almost three hours away" from GRCC. *See id.* at 5.

III. Analysis

Jones seeks leave to add Ms. Bateman as a new defendant to his § 1983 complaint against three other GRCC employees, ECF No. 1. *See* Pl.'s Mot. to Amend 1, 6. Liberally construed, his proposed amendment asserts one claim for damages against Ms. Bateman in her personal capacity, *see* 42 U.S.C. § 1983, for retaliating against Jones for filing this lawsuit in October 2021. *See* Pl.'s Mot. to Amend. 6; *see generally Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995). Although Jones did not cite a specific legal basis for this claim, his allegation that Ms. Bateman had a retaliatory motive for initiating his transfer out of GRCC could demonstrate a violation of his First Amendment right to access the courts. *See generally Jones v. Solomon*, 90 F.4th 198, 213–15 (4th Cir. 2024); *Hoye v. Gilmore*, 691 F. App'x 764, 765–66 (4th Cir. 2017).

To state a retaliation claim against Ms. Bateman, Jones must allege facts supporting a reasonable inference that (1) he engaged in activity protected under the First Amendment, (2) Ms. Bateman took some action that adversely affected his First Amendment rights, and (3) a "but-for" causal relationship exists between Jones's protected activity and Ms. Bateman's challenged conduct. *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017). "Claims of retaliation by prisoners must 'be regarded with skepticism, lest federal courts embroil themselves in every disciplinary [or administrative] act that occurs in state penal institutions.'" *Hoye*, 691 F. App'x at 765 (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)).

On the first element, "it is well-established that the filing of a lawsuit is protected conduct" under the First Amendment. *Ballance v. Holman*, No. 7:21cv187, 2022 WL 4542112, at *5 (W.D. Va. Sept. 28, 2022) (citing *Booker v. S.C. Dep't of Corrs.*, 855 F.3d 533, 541 (4th Cir. 2017)). Jones's assertion that he filed the underlying § 1983 lawsuit before Ms. Bateman initiated his transfer to another prison satisfies this element. *See id.*

On the second element, "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *Martin*, 858 F.3d at 249. "A plaintiff's actual response to the retaliatory conduct is not dispositive of the question of whether such action would likely deter a person of ordinary firmness." *Id.* at 250 (cleaned up). This determination is also context-specific. Because "prisoners are expected to endure more than the average citizen," for example, courts should consider whether a prison official's allegedly adverse action is a "common" consequence of incarceration. *Hoye*, 691 F. App'x at 765 (quoting *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005)). "Since transfers are common among prisoners, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Id.* (quoting *Siggers-El*, 412 F.3d at 701); *accord Jones*, 90 F.4th at 214 ("Prison officials certainly have broad latitude to relocate prisoners as needed for the purposes of prison administration and safety. But they may not violate the First Amendment by transferring a prisoner in retaliation for protected conduct." (citations omitted)).

However, "a prison transfer or the threat of a transfer can be an adverse action if that transfer would result in foreseeable, negative consequences to the particular prisoner." *Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010), *cited with approval in Hoye*, 691 F. App'x at 766. In *Hill*, for example, the Sixth Circuit held that "[t]he [prison] staff's threat and recommendation . .

. to transfer Hill to the lock-down unit" at another prison plausibly alleged an adverse action because "the transfer would foreseeably lead to a living environment with more restrictions and fewer privileges than the general population." *Id.* at 475. Conversely, in *Hoye*, the Fourth Circuit explained that Hoye's transfer to a prison that was "on the same security level" as the first prison, but located 70 miles away from his family, was not an adverse action in part because Hoye was not "placed in segregated housing or in a lock-down unit" at the second prison. 691 F. App'x at 766 (citing *Hill*, 630 F.3d at 474). "[T]he transfer 'may have inconvenienced'" Hoye, but those consequences were not objectively, sufficiently serious to deter a prisoner of ordinary firmness from exercising his First Amendment rights. *Id.* (quoting *Am. Civil Liberties Union of Md., Inc. v. Wicomico Cty.*, 999 F.2d 780, 786 (4th Cir. 1993)); *accord Jones*, 90 F.4th at 214 ("That said, a plaintiff seeking to recover for retaliation must show that the defendant's conduct resulted in something more than a *de minimis* inconvenience to her exercise of First Amendment rights." (quotation marks omitted)).

On April 12, 2022, Ms. Bateman told Jones that "she was going to start paperwork for his transfer" out of GRCC. Pl.'s Mot. to Amend 3; *see also id.* at 1 ("On 4-12-22, Ms. Bateman informed Jones she was submitting paperwork to transfer him from the facility."). They met again on April 14. *See id.* at 3. Ms. Bateman told Jones why he had been moved to segregation and reiterated that he was being transferred. *Id.* When Jones "asked why he was being transferred" from GRCC—where he was "well-established" and had "worked his way up to" a high-ranking job—"Ms. Bateman said it was procedure because" his victim, Mr. Cuneo, was now also housed at GRCC. *Id.* at 2–3.

Sometime around April 12, Ms. Bateman "submitt[ed] paperwork to transfer [Jones] from the facility." *Id.* at 1; *see also id.* at 4 ("Ms. Bateman told Jones the morning of [April] 12th

8

that she was going to transfer him. She had already made up her mind."). On April 26, "Ms. Bateman informed Jones [that] Richmond had approved his transfer." *Id.* at 2. A few weeks later, Jones was transferred to GCC in Jarrett, Virginia. *Id.* GCC is "the same level" prison as GRCC, but it takes "almost three hours one way" to travel between the two facilities. *Id.* at 5. Two of the three adverse consequences Jones describes in his proposed claim against Ms. Bateman—GCC administrators confiscating photos and books that he was allowed to have at GRCC and his elderly mother having to "travel long distances to visit" him in prison—are unique to his placement *at* GCC. *Id.* at 5–6. He attributes his missing personal property to GRCC's failure to send it to GCC, but he does not allege that Ms. Bateman played any role in that failure. *Id.* at 5.

Being transferred between facilities within a state prison system is a common consequence of incarceration. *Hoye*, 691 F. App'x at 765. Thus, neither Ms. Bateman's "submitting paperwork to transfer him from the [VDOC] facility" in Chatham, Pl.'s Mot. to Amend 1; *see also id.* at 3–4, nor Jones's actual transfer to another VDOC facility, would deter a prisoner of ordinary firmness from continuing to file lawsuits against prison officials. *See Hoye*, 691 F. App'x at 765. Ms. Bateman had "no control over" how unnamed staff at GRCC transferred Jones's personal property or the GCC staff's decision to confiscate property he was allowed to have at GRCC. *See Warren v. Clasp*, No. 1:22cv489, 2023 WL 18664871, at *5 (E.D. Va. Feb. 9, 2023). Moreover, unlike the prisoner in *Hill*, Jones does not allege that Ms. Bateman threatened to send him to a prison where Jones would be placed in an environment with "more restrictions and fewer privileges" than he had at GRCC. *Hill*, 630 F.3d at 475.

The facts alleged in Jones's proposed claim are similar to those the *Hoye* Court found insufficient to show that Hoye's transfer itself was an adverse action. Jones alleges that GRCC

9

and GCC are the same security level. Pl.'s Mot. to Amend 5; *see Hoye*, 691 F. App'x at 765. It takes almost three hours to travel from GRCC to GCC, but both VDOC facilities are in central Virginia. *See* Pl.'s Mot. to Am. 5. In *Hoye*, the Fourth Circuit held that "[t]raveling an extra hour to the prison—two hours round trip—does not make" the transfer itself an adverse action. 691 F. App'x at 765. Jones asserts that his elderly mother "should not travel long distances to visit" him in prison, Pl.'s Mot. to Am. 5, but he does not explain how much longer she must travel now compared to when he was GRCC. *See Hoye*, 691 F. App'x at 765. An "unspecified increase" in travel time, without more, would not deter a prisoner of ordinary firmness from filing lawsuits against prison officials. *Cf. id.* (concluding the same with respect to an "unspecified increase in the cost of telephone calls" to prisoner's family).

  Even if Jones plausibly alleged that his transfer was an adverse action, he has not alleged enough facts to establish the causation element. *See, e.g.*, *Johnson-El v. Beck*, No. 3:11cv115, 2011 WL 1155679, at *5 (W.D.N.C. Mar. 25, 2011) (dismissing prisoner's retaliatory-transfer claim under 28 U.S.C. § 1915A because his complaint alleged nothing more than a "temporal proximity" between the date he filed a grievance and the date he was transferred). To show causation, a plaintiff must allege facts demonstrating that his protected conduct was "a 'but-for' cause" of the defendant's adverse action, "meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 587 U.S. ---, 139 S. Ct. 1715, 1722 (2019); *see also Savoy v. Bishop*, 706 F. App'x 786, 790 (4th Cir. 2017) (per curiam). Those facts "must show, at the very least, that the defendant was aware of [the plaintiff] engaging in protected activity." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005).

Jones filed this lawsuit in October 2021. Jones asserts that Ms. Bateman "used the incident with Daniel Cuneo" as a pretext to transfer Jones, "punishing [him] for the lawsuit." Pl.'s Mot. to Amend 6. The "incident" with Mr. Cuneo occurred on April 11, 2022. Ms. Bateman first spoke to Jones about submitting his transfer paperwork on April 12, 2022—six months after Jones filed this lawsuit. Jones does not allege any facts suggesting Ms. Bateman knew about this lawsuit in April 2022. *See id.* at 1–5. Instead, he has accused Ms. Bateman of retaliating against him because "it is well known among the inmates that when you sue [V]DOC you get transferred around as a form of punishment." *Id.* at 5. Even at the pleading stage, Jones "cannot just throw out an accusation of retaliation without any [factual] allegation as to 'how or why [Ms. Bateman] retaliated against' him." *Jones*, 90 F.4th at 216 (quoting *Adams*, 40 F.3d at 74).

Moreover, Jones alleges facts showing that Ms. Bateman had a legitimate, non-retaliatory motive for initiating his transfer out of GRCC, Pl.'s Mot. to Amend 1, 3. *See Schreiber v. Dunabin*, 938 F. Supp. 2d 587, 594–95 (E.D. Va. 2013) ("Courts recognize that a plaintiff can plead himself out of court by pleading facts that show that he has no legal claim."). Having been alerted to the fact that Jones's victim was now also at GRCC, *id.* at 1, "Ms. Bateman said it was procedure," *id.* at 3, for her to ask VDOC officials in Richmond to approve transferring one of them to a different facility, *see id.* at 2, 4. Apparently, she decided that Jones should be transferred. *See id.* at 1–3. "As between that obvious alternative explanation" for Ms. Bateman's conduct and the purposeful, retaliatory motive that Jones "asks [the court] to infer" without any supporting facts, retaliation "is not a plausible conclusion," *Iqbal*, 555 U.S. at 682 (quotation marks omitted).

11

Because Jones's proposed pleading does not establish the second and third elements, he does not state a § 1983 claim against Ms. Bateman for retaliation in violation of his First Amendment rights. Thus, Jones's proposed amendment to his complaint would be futile. *Oliver*, 350 F. Supp. 3d at 346, 355.

His proposed amendment also "fails to satisfy the requirements of the federal rules," *Katyle*, 637 F.3d at 471, specifically Rule 20(a)(2). Under this rule, multiple "persons . . . may be joined in one action as defendants" *only* if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of *the same* transaction, occurrence, or series of transactions or occurrences; *and* any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A)–(B) (emphasis added). Jones's sole surviving § 1983 claim against Defendants relates to the confiscation of images and implementation of the IRP in May 2021. His proposed § 1983 claim against Ms. Bateman, on the other hand, arises out of her decision to submit transfer paperwork for him in April 2022. Ms. Bateman was not involved with the confiscation or IRP, and the existing Defendants were not involved in the transfer decision. Additionally, while both claims implicate First Amendment rights, the legal principles used to decide them are entirely different. *Thornburg v. Abbott*, 490 U.S. 401, 415–16 (1989) (claims alleging that prison's content-based restriction on incoming mail violates prisoner's First Amendment right to receive speech), *with Jones*, 90 F.4th at 213–15 (claim alleging that prisoner was transferred in retaliation for exercising a First Amendment right). Thus, the two claims would be factually and legally distinct. *See* Fed. R. Civ. P. 20(a)(2)(B).

## IV. Conclusion

For the foregoing reasons, Jones's motion for leave to amend, ECF No. 26, is **DENIED**.

It is so ORDERED.

                                            ENTER: March 22, 2024

                                            */s/ Joel C. Hoppe*

                                            Joel C. Hoppe
                                            U.S. Magistrate Judge