CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

March 22, 2024

LAURA A. AUSTIN, CLERK
BY:            /s/T. Taylor
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

|  |  |  |
|---|---|---|
| WESLEY REX JONES, | ) | |
| Plaintiff, | ) | Civil Action No. 7:21-cv-00541 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| SHELBY HARRELL, et al., | ) | By:   Joel C. Hoppe |
| Defendants. | ) | United States Magistrate Judge |

Plaintiff Wesley Rex Jones, a Virginia inmate appearing pro se, alleges that Defendants Shelby Harrell, Heather Boyd, and Jeffrey Dillman, all Virginia Department of Corrections ("VDOC") employees, violated his rights under the First and Fourteenth Amendments to the U.S. Constitution, 42 U.S.C. § 1983. *See* Compl. 3–11, ECF No. 1. Jones alleges that Defendants confiscated photographs he ordered from VDOC-approved vendor and required him to comply with a vague and overly broad Individualized Rehabilitation Plan ("IRP") prohibiting him from viewing or possessing materials that visually portray "any male" subject in certain ways. *See id.* He seeks equitable relief and $30,000 from each Defendant, including for "mental [and] emotional damages." *Id.* at 12. Defendants moved for summary judgment, ECF No. 23, on four aspects of Jones's verified complaint. *See* Defs.' Br. in Supp. 8–9 (all claims against Dillman), 10–11 (Defendants' interpretation of Count I), 11–13 (Defendants' interpretation of Count II), 13–14 (request for compensatory damages, 42 U.S.C. § 1997e(e)), ECF No. 24; Fed. R. Civ. P. 56(a). Their motion is fully briefed, ECF Nos. 24, 29, and can be decided without a hearing.[1]

I. Summary

Defendants' motion for summary judgment, ECF No. 23, will be granted in part and denied in part. Specifically, Defendant Dillman has shown that there is no genuine dispute that

---

[1] The matter is before me by the parties' consent under 28 U.S.C. § 636(c). ECF No. 22.

he was not personally involved in the underlying alleged constitutional violations related to Jones's IRP and confiscated photographs and that he is therefore entitled to judgment as a matter of law under 42 U.S.C. § 1983. Accordingly, Defendants' motion will be granted with respect to any § 1983 claims against Dillman, and he will be dismissed from the action. Defendant Boyd has shown there is no genuine dispute that Jones's sexual orientation did not factor into her decisions about his IRP and that she is entitled to judgment as a matter of law on Jones's § 1983 claim that she violated his rights under the Fourteenth Amendment's Equal Protection Clause. Additionally, Jones's verified complaint does not plead facts supporting a reasonable inference that Harrell's decision to confiscate Jones's photographs was motivated by his sexual orientation. Accordingly, Defendants' motion will be granted in part with respect to Count II of the complaint. Only Count I will remain.

In Count I, Jones alleges that his IRP is unconstitutionally vague and over broad—both as Boyd drafted it and as Harrell applied it to justify confiscating most of Jones's commercial photographs. Liberally construed, Count I asserts § 1983 claims against Boyd and Harrell for violating Jones's First Amendment right to receive speech while incarcerated. Contrary to Defendants' position, Jones's verified complaint does not raise "a Fourteenth Amendment [Due Process Clause] facial vagueness challenge" against either VDOC Operating Procedure ("OP") 735.2, or "the concept of IRPs." Defs.' Br. in Supp. 10. Defendants' motion will be denied to the extent that it seeks summary judgment on a claim not asserted in the complaint. Defendants Harrell and Boyd will be directed to file a motion for summary judgment on Jones's First Amendment claims in Count I.

Finally, Defendants have not shown that they are entitled to judgment as a matter of law on Jones's request for compensatory damages. Their motion will be denied to the extent it asks

the Court to dismiss that request for relief under 42 U.S.C. § 1997e(e). A separate Order shall enter.

## II. Standard of Review

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim or defense. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 521–22 (4th Cir. 2003). Under Rule 56, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "*genuine* issue of *material* fact" exists when proffered evidence that would be admissible at trial, viewed in the light most favorable to the nonmoving party, "is such that a reasonable jury could return a verdict for the nonmoving party" on a disputed "fact[] that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

"[T]he party seeking summary judgment bears [the] initial burden of demonstrating the absence of a genuine issue of material fact." *Bouchat*, 346 F.3d at 522 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see* Fed. R. Civ. P. 56(c), (e). When, as here, a defendant moves for summary judgment on the plaintiff's claim against it, the defendant need only "point[] out . . . that there is an absence of [admissible] evidence to support" an essential element of that claim. *Celotex Corp.*, 477 U.S. at 325; *see* Fed. R. Civ. P. 56(a), (c)(1)(B). It may also "cit[e] to particular parts of materials in the record" to show that a material "fact cannot be . . . genuinely disputed" based on the available evidence. Fed. R. Civ. P. 56(c)(1)(A). Once the defendant meets

this burden, the plaintiff "must come forward and demonstrate" that a genuine dispute of material fact "does, in fact, exist." *Bouchat*, 346 F.3d at 522 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). "As a general rule," the plaintiff "cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the [defendant's] motion." *Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021) (internal quotation marks omitted); *see* Fed. R. Civ. P. 56(c)(1). "However, it is well established that a *verified* complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the [factual] allegations contained therein are based on [the plaintiff's] personal knowledge." *Goodman*, 986 F.3d at 498 (internal quotation marks omitted); *see* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). "A complaint is verified if it is signed, sworn, and submitted under penalty of perjury." *Goodman*, 986 F.3d at 495 n.2 (internal quotation marks omitted).

### III. Background[2] & Procedural History

---

[2] The facts set out below come from Jones's verified complaint and exhibits attached thereto, ECF Nos. 1 to 1-1; *see Goodman*, 986 F.3d at 498, and each Defendant's affidavit attached to the brief supporting their motion for summary judgment, Aff. of Shelby Harrell, M.Ed. (June 2, 2022), ECF No. 24-1; Aff. of Jeffrey Dillman (May 24, 2022), ECF No. 24-2; Aff. of Heather Boyd, M.S. (June 3, 2022), ECF No. 24-3. The Court also takes judicial notice of Jones's underlying criminal convictions and other undisputed facts that are publicly available on official state-government websites. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *Centre L. & Consulting v. Axiom Res. Mgmt.*, 456 F. Supp. 3d 765, 767 n.1 (E.D. Va. 2020). All facts and reasonable inferences drawn therefrom are presented in the light most favorable to Jones as the nonmoving party. *Anderson*, 477 U.S. at 248. Jones's signed response in opposition to Defendants' motion for summary judgment, ECF No. 29, is not "verified" because it is not also "sworn[] and submitted under penalty of perjury," *Goodman*, 986 F.3d at 495 n.2. Accordingly, Jones cannot rely on any facts stated in that document to demonstrate the existence of a genuinely disputed material fact. *See* Fed. R. Civ. P. 56(c)(1); *cf. Jones v. Perry*, No. 9:21cv1822, 2022 WL 16952240, at *5 n.4 (D.S.C. Oct. 27, 2022) ("A pro se litigant's verified complaint or—as in this case—other verified submission must be considered as an affidavit and may, standing alone, defeat a motion for summary judgment when the [factual] allegations contained therein are based on personal knowledge."

In 1999, Jones was convicted on multiple counts of forcible sodomy, aggravated sexual battery, and taking indecent liberties with a child. *See, e.g.*, *Commonwealth v. Wesley R. Jones*, Nos. CR98-104-00, CR98-104-01, CR98-104-11, 98-282-02 (Campbell Cnty. Cir. Ct. Mar. 24, 1999); Harrell Aff. ¶ 12. He has been in VDOC custody since that time. Boyd Aff. ¶ 5. Between August 2019 and May 2022, Jones was housed at Green Rock Correctional Center ("GRCC") in Chatham, Virginia. *See* Compl. 1; Harrell Aff. ¶ 5.

Jones's verified complaint contains two counts, each labeled "Violation of the Fourteenth Amendment of the United States Constitution." *Id.* at 3, 8. Both counts relate to Defendants' involvement in confiscating more than 100 photographs (plus dozens of thumbnail images) that Jones ordered through a VDOC-approved vendor and subsequently requiring him to comply with an Individualized Rehabilitation Plan ("IRP") as part of his sex-offender treatment at GRCC. *See generally* Compl. 3–7 (Count I); *id.* at 8–11 (Count II); Compl. Ex. 11, GRCC Individualized Rehab. Plan (May 11, 2021), ECF No. 1-1, at 15–16. Jones's IRP prohibits him "from viewing or possessing any publications, materials, drawings, or photos which may be detrimental to his [IRP], or which may or could promote sexually deviant behaviors, per O.P. 803.2." Compl. Ex. 11, ECF No. 1-1, at 15. This prohibition includes,

> viewing and possessing materials (including drawings) of any male who appears to be under the age of 18, or is purposefully attempting to appear to be under the age of 18, as well as all photographs, or drawings, that violate VA DOC policy (i.e., nude or any pornographic materials). Additionally, Mr. Jones may not view or possess materials featuring males touching themselves or each other in a manner that is perceived as sexual in nature, including but not limited to, touching the genital area, breasts, or buttock of themselves or others.

(citing *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991)), *adopted*, 2022 WL 16951990 (D.S.C. Nov. 15, 2022).

*Id.* (citing Va. Dep't of Corrs., *Incoming Publications*, OP 803.2 § I.B.2, ECF No. 24-3, at 27).

Harrell was a Psychology Associate I at GRCC in the spring of 2021. *See* Compl. 3; Harrell Aff. ¶¶ 1, 7–9; Boyd Aff. ¶ 8. On April 19, 2021, she directed two corrections officers to collect Jones's "personal papers, including books, magazines, and photos" and send them to her for review. Compl. 3; *see* Boyd Aff. ¶¶ 8–9. Jones got some of those items back the next day. Compl. 3. Three books, 119 photos, and 57 pages of "thumbnail pictures used to order photos from an approved vendor" were missing. *Id.*; *see* Compl. Ex. 20, Offender Request (Apr. 21, 2021), ECF No. 1-1, at 26. Jones promptly asked Harrell to return the photos and thumbnails. Compl. Ex. 20, ECF No. 1-1, at 26. He also noted that he is bisexual and suggested Harrell was discriminating against him based on his sexual orientation. *See id.* On April 22, Harrell responded that they would meet within the week to discuss these items. *Id.*

In early May 2021, Jones and Harrell met in person, Compl. 3; *see* Harrell Aff. ¶ 9, and Defendant Heather Boyd, Psychology Associate II for VDOC's Western Region, joined them by video. Compl. 3–4; Harrell Aff. ¶¶ 8–9; Boyd Aff. ¶¶ 12, 17. Harrell and Boyd told Jones about his new IRP and reviewed its terms with him. Compl. 3–4; *see also* Harrell Aff. ¶¶ 10–11; Boyd Aff. ¶¶ 12, 26. They also explained that the books and photographs that Harrell had set aside on April 20 would not be returned to him. *See* Compl. 3–4. Jones argued that at least 100 of the photos he had ordered through the VDOC-approved vendor did comply with "the plan's criteria," but Harrell and Boyd disagreed. *Id.* at 4. In May and June 2021, Jones filed grievances challenging both the IRP's terms and Defendants' decision to confiscate 119 photos and 57 pages of thumbnail images. *See id.* at 8–9; Compl. Exs. 7 to 10, ECF No. 1-1, at 9–14. That August, Defendant Jeffrey Dillman, VDOC's Health Services Director, concluded that Jones's grievance was unfounded. Compl. Ex. 2, ECF No. 1-1, at 2; *see* Compl. 6–7. Jones has "not

attempted to order any more photos until this situation is resolved." Compl. 9. Given his IRP's language, he is concerned that ordering any photos of men could result in disciplinary charges, which would cost him his prison job and other "incentives received for being charge free." *Id.* at 10.

*

In October 2021, Jones filed a two-count handwritten complaint seeking relief against each Defendant under 42 U.S.C. § 1983. Compl., ECF No. 1. In Count I, Jones asserts that his IRP is unconstitutionally vague and over broad—both on its face and as applied to most of the photographs and thumbnail pages that Harrell confiscated in April 2021. *See id.* at 3–5, 7 (citing Compl. Ex. 11); *accord* Pl.'s Br. in Opp'n 2, 14 (arguing the same). In Count II, Jones asserts that Harrell and Boyd discriminated against him based on his sexual orientation (bisexual) because Jones's IRP forbids him to view or possess "pictures of men" portrayed in certain ways. Compl. 10. *See generally id.* at 8–11; Compl. Exs. 1 to 10 (grievances discussing IRP and sexual orientation), ECF No. 1-1, at 1–14; *accord* Pl.'s Br. in Opp'n 1–2, 4, 11, 13 (arguing the same). Jones also faults Dillman for his role in determining that Jones's grievance appeal challenging his IRP's terms and the confiscation of his photographs was "unfounded." *See generally* Compl. 6–7 (Count II); *id.* at 8–9 (Count II) (citing Compl. Ex. 2, ECF No. 1-1, at 2).

A.    *Cognizable § 1983 Claims*

A § 1983 claim against an individual state actor has two basic elements. *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). The plaintiff must show "the violation of a right secured by the Constitution and laws of the United States and must show that the . . . deprivation was [personally] committed by a person acting under color of state law." *West*, 487 U.S. at 48; *accord Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each

7

Government-official defendant, through the official's own individual actions, has violated the Constitution."). The facts needed to establish the first element will depend on the specific constitutional right or provision at issue. *Iqbal*, 556 U.S. at 677; *see also Daniels v. Williams*, 474 U.S. 327, 330 (1986); *Loftus v. Bobzien*, 848 F.3d 278, 285 (4th Cir. 2017).

As noted, Jones labeled both Count I and Count II simply, "Violation of the Fourteenth Amendment." Compl. 3, 8. This broad description could refer to that amendment's Due Process Clause and/or Equal Protection Clause, U.S. Const. amend. XIV § 1, or to any one of the "protections contained in the Bill of Rights" that are also applicable to the States through the Fourteenth Amendment's Due Process Clause, *Timbs v. Indiana*, 139 S. Ct. 682, 687 (2019). Rather than relying on Jones's labels, the Court should look at the substance of his allegations to determine if one of the Bill of Rights amendments "provides an explicit textual source of constitutional protection against th[e] sort of . . . governmental conduct" underlying each claim, *Graham v. Connor*, 490 U.S. 386, 395 (1989). *See* 28 U.S.C. § 1915A(b)(1); *cf. Castro v. United States*, 540 U.S. 375, 381–82 (2003) ("Federal courts sometimes will ignore the legal label that a *pro se* litigant attaches to a motion in order to place it within a different legal category. They may do so in order . . . to create a better correspondence between the substance of the *pro se* motion's claim and its underlying legal basis." (internal citations omitted)); *Desper v. Clarke*, 1 F.4th 236, 242–43 (4th Cir. 2021) (looking at the substance of complaint's allegations to determine the scope of pro se plaintiff's constitutional challenge to VDOC policy governing visitation). If so, then "that Amendment, not the [Fourteenth Amendment's] more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham*, 490 U.S. at 395; *cf. Edwards v. City of Goldsboro*, 178 F.3d 231, 248 n.11 (4th Cir. 1999) (affirming dismissal of plaintiff's "separate [Fourteenth Amendment] substantive due process claim," which

was based on the same facts as his surviving First Amendment free speech claim, "[b]ecause the First Amendment provides an explicit textual source of constitutional protection against the particular sort of governmental behavior" underlying both claims (internal quotation marks omitted)). Jones's complaint provides additional context illustrating his "essential grievance[s]," which allows this Court to identify the specific constitutional right and provision at issue in each Count. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) ("Where the context, as here, makes clear a [pro se] litigant's essential grievance, the complaint's additional invocation of general legal principles need not detour the district court from resolving that which the litigant himself has shown to be his real concern."); *cf. Desper*, 1 F.4th at 242 (looking at the substance of the complaint's allegations in concluding that pro se plaintiff was not asking the court to decide "whether inmates generally have a constitutional right to visitation," but instead to decide a "narrower" issue which "can be fairly stated as whether the right of association protected by the Constitution requires a prison to allow an inmate who has committed a sex offense against a minor to have in-person visitation with his minor daughter").

In Count I, Jones asserts that Boyd drafted a vague and overly broad IRP giving Harrell unfettered discretion to punish Jones for viewing or possessing materials depicting non-nude adult men who are not "engaged in sexual acts as defined by" VDOC OP 830.2, but whom Harrell decides are either "too young looking," Compl. 7, or touching themselves or each other in a sexually "deviant" manner, *id.* at 4. *See generally id.* at 4–7 (arguing that his IRP's terms are "ambiguous" and allow Harrell to deny him access to photographs "based on [her] perception" of their content, even though she knows all models are at least 18 years old). Jones also asserts that Harrell applied his IRP to confiscate at least 100 commercial photographs even though their content did not violate the IRP's terms. *See id.* at 4–5. Government conduct that restricts

speech—including commercially available photographs—"because of . . . its subject matter[] or its content" implicates the First Amendment's Speech Clause. *Ashcroft v. Am. Civil Liberties Union*, 535 U.S. 564, 573 (2002). The Speech Clause, which extends to state conduct through the Fourteenth Amendment's Due Process Clause, protects an individual's rights to speak and to receive speech from others. *See generally Willis v. Town of Marshall, N.C.*, 426 F.3d 251, 259–60 (4th Cir. 2005) (collecting cases).

The Supreme Court has long recognized "that imprisonment does not automatically deprive a prisoner of certain important constitutional protections, including those in the First Amendment." *Beard v. Banks*, 548 U.S. 521, 528 (2006) (discussing *Turner v. Safley*, 482 U.S. 78 (1987)). But, "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large." *Shaw v. Murphy*, 532 U.S. 223, 229 (2001). In the First Amendment context, for example, a regulation that restricts prisoners' access to incoming publications "is valid if it is reasonably related to legitimate penological interests," *Turner*, 482 U.S. at 89. *See, e.g.*, *Beard*, 548 U.S. at 525, 528–33; *Thornburg v. Abbott*, 490 U.S. 401, 403–05, 412–19 (1989); *Fauconier v. Clarke*, 257 F. Supp. 3d 746, 758 (W.D. Va. 2017) (collecting cases). Accordingly, Count I is best understood as asserting a claim that Boyd and Harrell violated Jones's First Amendment right to free speech—including his right to receive commercially available photographs and publications—while incarcerated. *See, e.g.*, *Couch v. Jabe*, 737 F. Supp. 2d 561, 564–73 (W.D. Va. 2010) (analyzing prisoner's § 1983 overbreadth challenge to VDOC OP 830.2 under the First Amendment's Speech Clause); *Ballance v. Virginia*, 130 F. Supp. 2d 754, 758–60 (W.D. Va. 2000) (analyzing prisoner's § 1983 claim challenging officials' decision to confiscate specific photographs under the First Amendment's Speech Clause).

In Count II, Jones alleges that Harrell and Boyd discriminated against him based on his sexual orientation (bisexual) because his IRP forbids him to view or possess images portraying male models in certain manners. Compl. 10; *see generally id.* at 8–11. This claim is properly analyzed under the Fourteenth Amendment's Equal Protection Clause. *See, e.g.*, *Veney v. Wyche*, 293 F.3d 726, 729 (4th Cir. 2002) (analyzing inmate's § 1983 claim that jail officials "treat[ed] him differently from other inmates because of his gender and sexual preference" under the Equal Protection Clause); *accord* Defs.' Br. in Supp. 13 ("Plaintiff does not plausibly allege a violation of his equal protection rights. Plaintiff's complaint merely asserts and speculates that he is being discriminated against based on his sexual orientation, which is insufficient. . . . To the contrary, evidence demonstrates that Plaintiff's IRP was not based on his sexual orientation.").

*

Defendants Harrell and Boyd moved for summary judgment on the merits of both counts, as construed in their brief. *See* Defs.' Br. in Supp. 10–14. Defendant Dillman argues that Jones failed to allege facts showing that he was personally involved in the underlying allegedly unconstitutional conduct. *See id.* at 8–9. Additionally, all three Defendants argue that Jones cannot recover compensatory damages for any "mental or emotional injury" because he does not allege that he suffered a physical injury. *Id.* at 13–15 (citing 42 U.S.C. § 1997e(e)). They ask the Court to dismiss that request for relief. *Id.* at 14.

On the merits, Harrell and Boyd construed Count I as presenting "a Fourteenth Amendment facial vagueness challenge against [VDOC] OP 735.2, and/or the concept of IRPs." *Id.* at 10 (footnotes omitted); *see id.* at 10–11 (applying Due Process Clause principles). They construed Count II as raising an "as-applied challenge" to OP 735.2 and/or "to being issued an IRP [under OP 735.2] because it was discriminatorily based on his sexual orientation." *Id.* at 11;

*see generally id.* at 11–13 (applying Equal Protection Clause principles). VDOC OP 735.2

authorizes the use of IRPs in sex offender treatment services provided in Virginia correctional

institutions. *See* Boyd Aff. Ex. B, Va. Dep't of Corrs., OP 735.2, *Sex Offender Treatment

Services (Institutions)* (eff. May 1, 2021), ECF No. 24-3, at 14–23. Jones's pleading does not

mention OP 735.2. *See generally* Compl. 1–16. While it does contain a few references to VDOC

policies related to mental-health treatment generally, *see id.* at 3, 6–7, that information "need not

detour [this Court] from resolving" his "real concern" that each Defendant violated his rights

under the First Amendment's Speech Clause (Count I) and the Fourteenth Amendment's Equal

Protection Clause (Count II). *See Beaudett*, 775 F.2d at 1278; *cf. Desper*, 1 F.4th at 242 ("Desper

did not allege that Operating Procedure 851.1 itself, which comprehensively regulates visitation,

violated any right to association that may have survived his incarceration."); *accord* Defs.' Br. in

Supp. 2 n.2, 10 n.4 (recognizing that this Court might "construe[] Plaintiff's claims differently"

than Defendants construed them).

Defendants' brief adequately addresses the merits of Jones's equal protection claims

against Boyd and Harrell in Count II. Fed. R. Civ. P. 56(e)(3); *see also* 28 U.S.C. § 1915A(b)(1).

Their brief does not address Jones's First Amendment claims in Count I, specifically his

allegations describing both the contents of his overly broad IRP and each Defendant's personal

involvement in denying him access to the commercial photographs and thumbnail images that

supposedly violated his IRP's terms. *See generally* Defs.' Br. in Supp. 10–13.

B.    *Jones's Evidence*

While Jones was housed at GRCC, he purchased commercial photographs from a VDOC-

approved vendor. Compl. 4. Before Jones placed an order, this vendor "assured [him] that the

primary subjects in the photos are 18 years old or older." *Id.* at 5. The vendor also included a

written disclaimer with each visual-media order stating that "all persons" depicted therein "were at least 18 years of age when said visual media was created." Compl. Ex. 12, ECF No. 1-1 at 17; *see* Compl. 4–5 (citing Ex. 12). Jones owned more than 100 photos, plus the following "thumbnail" photo volumes that he used to order specific pictures: "Asian – Pictures of sensual Asian men," vols. 1–2; "Black – Pictures of exotic black men," vols. 1–2; "Erotic – They have clothes on, but these pictures are very revealing," vols. 1–3; "Fantasy – Pictures based on previous requests," vol. 4 ("Celebrities"); "Semi-Nude – If the towel or hand wasn't in the way, you would see it all," vols. 1–3; and "Twink – Young skinny smooth guys all over the age of 18," vols. 1–8 and 10. Compl. Ex. 13, Pineapple Pictures Volumes (July 13, 2019), ECF No. 1-1, at 18; *see also* Compl. Ex. 20, ECF No. 1-1, at 26. Jones "had more Twink [photos] than others." Compl. Ex. 13, ECF No. 1-1, at 18. "None of [his] photos had nude men or men engaged in sexual acts as defined by [VDOC] Operating Procedure. Although some had men together touching or kissing[,] there were none touching the genitals of another."[3] Compl. 5.

On April 19, 2021, Harrell directed two GRCC officers to collect Jones's "personal papers, including books, magazines, and photos" and send them to her for review. Compl. 3. The next day, Jones's property was returned except for three books; 119 commercial photos; 57 "pages of thumbnail pictures used to order photos from [the] vendor; two photos of Jones's nephews; one photo of his godson; and one "Entrepren[eu]r magazine." *Id.* at 3, 8. On April 21,

---

[3] *See generally* Va. Dep't of Corrs., *Incoming Publications*, OP 803.2 ("Nudity[:] The showing (human or cartoon) of the male or female genitals, pubic area, female breast with less than a fully opaque covering of the areola, or male or female buttocks with less than a full opaque covering of the anus."), ECF No. 24-3, at 26; *id.* § I.C.3 ("Staff will allow inmates to subscribe to, order, and receive publications directly from any vendor so long as the publication is received directly from the vendor and the publication does not . . . [c]ontain nudity or any sexually explicit content or sexual acts in violation of state or federal law to include child pornography."), ECF No. 24-3, at 27; *id.* § VII.A (defining "sexual acts" to mean "[a]ctual sexual intercourse . . . including inanimate object penetration," certain acts performed "in the context of sexual activity or arousal," and "[a]ny sexual acts in violation of state or federal law"), ECF No. 24-3, at 32–33.

Jones sent Harrell a written request asking her to return the photographs and thumbnail volumes. Compl. Ex. 20, ECF No. 1-1, at 26. He also noted that he is bisexual and suggested that Harrell was discriminating against him based on his sexual orientation. *Id.* On April 22, Harrell responded that they would meet within the week to discuss these items. *Id.*

Jones met with Harrell and Boyd in early May 2021. Compl. 3. Boyd appeared by video. *Id.* at 3–4. Harrell and Boyd informed Jones "of the [IRP] and how it was for [him] personally dealing with [his] crimes." *Id.* at 4. They told him that "not participating with the IRP would show negatively on [his] file." *Id.* at 9. When "asked why [he] had the photos and what they were for," Jones explained that he is "bisexual and used the photos as a means of escape, mentally, from prison." *Id.* at 4; *see also id.* at 10 ("I use the photos to escape and travel mentally by wondering about the person in the photo and the surroundings they are in."). Jones "argued that these photos had nothing to do with [his] crimes and had been approved through the mailroom for [him] to own," *id.*, because they did not depict "nude men or men engaged in sexual acts as defined by" VDOC policy, *id.* at 5. Some of Jones's photos depicted "men in a[] seductive pose," but they were all at least 18 years old. *Id.* at 4.

Jones's IRP prohibits him "from viewing or possessing any publications, materials, drawings, or photos which may be detrimental to his [IRP], or which may or could promote sexually deviant behaviors, per O.P. 803.2." Compl. Ex. 11, ECF No. 1-1, at 15. Materials "which may or could promote sexually deviant behaviors" include "'publications that [c]ontain nudity or any sexually explicit acts, including child pornography or sexual acts in violation of state or federal law.'" *Id.* (quoting OP 803.2 § I.C.3, ECF No. 24-3, at 27 (parentheses omitted)). In Jones's case, this further

> includes, but is not limited to, viewing and possessing materials (including drawings) of any male who appears to be under the age of 18, or is purposefully

14

attempting to appear to be under the age of 18, as well as all photographs, or drawings, that violate VA DOC policy (i.e., nude or any pornographic materials). Additionally, Mr. Jones may not view or possess materials featuring males touching themselves or each other in a manner that is perceived as sexual in nature, including but not limited to, touching the genital area, breasts, or buttock of themselves or others. This is per . . . Operating Procedure 803.2, Section IV., B., [sic] which states "In order to maintain security, discipline, and good order in [V]DOC facilities and to assist with rehabilitation and treatment objectives, . . . inmates are not permitted to send, receive or possess material that emphasizes explicit or graphic depictions or descriptions of sexual acts or contains nudity as defined in this operating procedure."

*Id.* (quoting OP 803.2 § I.B.2, ECF No. 24-3, at 27). If Jones ever receives or possesses "any known or questionable materials, drawings, photos, or publications," then it is his responsibility to contact GRCC's Psychology Associate about those materials. *Id.*

Jones's IRP further requires GRCC mailroom and property staff to monitor his "incoming mail" and "incoming orders," and to intercept anything "suspected" to violate this IRP. *Id.*, ECF No. 1-1, at 15–16. The Psychology Associate has sole authority to review any materials either addressed to Jones or in his possession to determine if they comply with his IRP and to penalize Jones for "any violations" by bringing "an institutional infraction for Possession of Contraband." *Id.*; *see also id.*, ECF No. 1-1, at 16 ("Any materials found to violate this IRP, or policy, will result in a 224 Possession of Contraband charge and will be confiscated."). Jones signed the IRP on May 11, 2021. *Id.*, ECF No. 1-1, at 16.

At the meeting, Harrell and Boyd also told Jones that his "materials were being confiscated w[h]ether [he] took the plan or not." Compl. 4. Jones argued that "at least" 100 photos actually complied with his new IRP's criteria, but Harrell and Boyd disagreed. *Id.* Of the 119 photos he owned, "maybe nine" depicted men who looked like "a young 18." *Id.* at 5. Because Jones "was denied all" of the photos, however, even the "ones who looked over 18 [were] subject to confiscation." *Id.*

On May 14, Jones sent Harrell a written request explaining his position that certain photos and thumbnail volumes complied with the terms of his IRP and, as such, there was no reason he should not be allowed to have them back. *See* Compl. Ex. 14, Offender Request (May 14, 2021), ECF No. 1-1, at 19. He "underst[oo]d" that he could not "have most of the Twink volumes." *Id.* He should be allowed "to have the erotic, semi-nude, Asian, and black volumes, as well as the listing of Celebrity names and corresponding volumes," however, because none of those thumbnail photos depicted "anyone who looks too young and the celebrit[ies] are all of age." *Id.* Jones asked Harrell to review those photos and return them. *Id.*

On May 20, Harrell completed a "Notice of Confiscation of Property" form listing: the items she had confiscated from Jones's personal papers in April 2021; the "[r]eason for [s]eizure"; and the items' current location. Compl. Ex. 18 (May 20, 2021), ECF No. 1-1, at 23; Dillman Aff. Ex. A (May 20, 2021), ECF No. 24-2, at 19. She wrote that seven magazine pages, 57 catalog pages, 119 commercial photos, and three personal photos were seized because they were "Against IRP." *Id.* Jones's address book with a nude photo, three books, and two hand-written notes from another inmate were seized as "contraband." *Id.* Everything had been sent to storage. *Id.* Several days later, Harrell responded to Jones's request that she return certain photos and thumbnail volumes that he believed complied with the terms of his IRP. *See* Compl. Ex. 14 (May 25, 2021), ECF No. 1-1, at 1. She wrote that the "[i]tems were reviewed and are still disapproved." *Id.*

Jones also sent Harrell two written requests reiterating that he is bisexual and expressing concern that his IRP unlawfully discriminated against him by denying him "materials related to [his] sexual orientation." Compl. Ex. 15, Offender Request (May 22, 2021), ECF No. 1-1, at 20; *accord id.* Ex. 16, Offender Request (May 26, 2021), ECF No. 1-1, at 21. He explained that he

had no objection to Harrell "searching [his] property for anything directly linked to [his] crimes" and he "agreed to a rehabilitation plan [that] does not allow [him] to have photos of children." Compl. Ex. 16, ECF No. 1-1, at 21. He did "not agree" to Harrell restricting his access to photos that, "according to the company," all depicted "men 18 years and older." *Id.* Harrell responded that his IRP "ha[d] nothing to do with [his] sexual orientation." Compl. Ex. 15 (May 25, 2021), ECF No. 1-1, at 20; *see also* Compl. Ex. 16 ("Information noted. Refer to previous response.") (May 28, 2021)), ECF No. 1-1, at 21.

In June, Jones filed a written complaint and grievances challenging both the allegedly discriminatory terms of his IRP and Harrell's decision to confiscate the 119 photos and 57 pages of thumbnail images. *See* Compl. 8–9; Compl. Exs. 7 to 10, ECF No. 1-1, at 9–14; *e.g.*, Compl. Ex. 7 ("My sexual orientation is not in line with the IRP due to my photos being of men 18 years and older."), ECF No. 1-1, at 9; *id.* Ex. 8 ("I have been given an [IRP] based on my criminal charges. However, in this plan I am banned from purchasing and owning commercial photos of adult men. I am bisexual and owned several photos and thumbnail ordering prints which [Harrell and Boyd] have confiscated. These are photos of men 18 years old and older . . . . The IRP will not allow me my right to purchase and own approved commercial photos in line with my sexual orientation."), ECF No. 1-1, at 10. Harrell responded that Jones's "sexual orientation ha[d] not been asked, nor [did] it pertain to [his] Individualized Rehabilitation Plan." *Id.* Ex. 3 (June 9, 2021), ECF No. 1-1, at 4. She did not address Jones's position that some of his confiscated materials complied with the terms of his IRP. *See id.*

GRCC's Warden responded to Jones's regular grievance in June 2021. *See* Compl. Ex. 1, ECF No. 1-1, at 1. He concluded the grievance was "unfounded" because VDOC OP 730.2, *Mental Health & Wellness Services: Screening Assessment & Classification*, was "correctly

applied." *Id.* That August, Defendant Jeffrey Dillman, VDOC's Health Services Director, concluded that Jones's grievance appeal was unfounded. Compl. 6–7; *see id*. Ex. 2 (Aug. 20, 2021), ECF No. 1-1, at 1–2 (citing Va. Dep't of Corrs., OP 730.2, *Mental Health & Wellness Services: Screening Assessment & Classification*)). Jones has "not attempted to order any more photos until this situation is resolved." Compl. 9. Given his IRP's far-reaching language, he is concerned that ordering any photos of men could result in disciplinary charges, which would cost him his prison job and other "incentives received for being charge free." *Id.* at 10.

C.     *Defendants' Evidence*

      Shelby Harrell is a Psychology Associate I at GRCC. *See* Harrell Aff. ¶¶ 1, 6. Her "job duties include ensuring that sex offenders . . . receive appropriate treatment at this facility and to teach the inmates to self-monitor their behaviors and to be able to correct any issues to prevent the person from re-offending upon release." *Id.* ¶ 4. Heather Boyd is a Psychology Associate II in the VDOC Western Regional Office's Sex Offenders Services division. Boyd Aff. ¶ 1. She is a Certified Sex Offender Treatment Provider. *Id.* Boyd's "job duties include ensuring that sex offenders housed in facilities in the Western Region are getting treatment at their assigned facility . . . . The primary goal of sex offender treatment is to teach the inmate to self-monitor his behavior and to be able to recognize and correct any issues to prevent the inmate from re-offending upon release." *Id.* ¶ 4.

      Jones entered VDOC custody in 1999. Boyd Aff. ¶ 5. "Jones is a sex-offender and, as part of his treatment plan, [Boyd] ha[s] the authority to review his property (documents, photos, etc.) to ensure that he is not participating in offense related behavior." *Id.* ¶ 7. Harrell had the same authority to review Jones's personal property "as part of his treatment plan when he was at GR[C]C." Harrell Aff. ¶ 13. Jones's "official VDOC records" show multiple convictions for

forcible sodomy, aggravated sexual battery, and taking indecent liberties with a child. *See* Boyd Aff. ¶ 6; Harrell Aff. ¶ 12. "His crimes were against underage male victims." Harrell Aff. ¶ 12. Jones will not be eligible for parole until 2099. *See* Boyd Aff. Ex. A, Mental Health Progress Notes (May 11, 2021), ECF No. 24-3, at 13 ("His GTRD is 2099.").

In April 2021, "the GR[C]C mailroom sent [Harrell] photos and catalogue pages that Jones had ordered from Pineapple Express because of the young age of the males depicted in the photos and catalog pages." Harrell Aff. ¶ 13. Harrell contacted Boyd "regarding commercial photos" addressed to Jones. Boyd Aff. ¶ 8. Boyd asked Harrell "to send [her] the photos and materials to review," which Harrell did. *Id.* Boyd recalls that "[t]he materials included an address book and nude photo, 7 magazine photos, 57 catalogue pages, 50 plus commercial photos, two handwritten sheets from another inmate, 3 books, and 3 personal photos." Boyd Aff. ¶ 8. She "reviewed the photos and researched . . . Jones's criminal history." *Id.* Boyd "scheduled a visit to GR[C]C for April 20, 2021, to conduct a property review on Jones and other inmates" at the facility. *Id.* ¶ 9.

"Prior to [Boyd's] visit, correctional officers conducted a search of Jones's property in his cell and removed Jones's property for [her] review." *Id.* On April 20, Boyd "reviewed Jones's property and found over 50 plus commercial photos (nude and seminude) of individuals who appeared to be minor males. [She] reviewed a plethora of thumbnails from Pineapple Express; a handwritten order list; a commercial photo of two individuals who appeared to be minor males engaging in a sexual act; [and] three disapproved books." *Id.* ¶ 11; *see also* Boyd Aff. Ex. A, Mental Health Services Progress Notes (May 11, 2021), ECF No. 24-3, at 13 (stating the same). "Pineapple Express is a publication catering to homosexual men." Boyd Aff. ¶ 11 n.1.

Neither Harrell nor Boyd interviewed Jones on April 20. Harrell Aff. ¶ 8. They "scheduled a Google Meet virtual interview with Jones for May 11, 2021." *Id.* Before the meeting, "security staff gathered Jones's property so that [Boyd] could review it face to face. The property included loose papers, notebooks, and pictures." Boyd Aff. ¶ 12. Boyd reviewed these materials on May 11, 2021, shortly before she met (via video link) with Jones and Harrell that afternoon. *See id.*; Boyd Aff. Ex. A, ECF No. 24-3, at 12–13. "Boyd took the lead" asking Jones questions during this meeting. Harrell Aff. ¶ 9; *see* Boyd Aff. ¶ 12. Her contemporaneous notes show that Jones exhibited good eye contact, normal speech and behavior, a euthymic mood and full affect, average intelligence, and linear thought process with no abnormal content noted. Boyd Aff. Ex. A, ECF No. 24-3, at 12. His insight was "marginal," and his judgment and impulse control were both "fair." *Id.*

Boyd asked Jones several questions during their clinical interview. *See* Boyd Aff. ¶¶ 12–17. She "asked about his current offenses," to which Jones "stated, 'Nothing happened. These people lived in my mom's trailer park. A woman thought I was going to marry her but I was not. Her nephew accused me out of the blue.'" Boyd Aff. Ex. A, ECF No. 24-3, at 12. "After prompting," Jones added, "'I lived in the trailer park to [sic] but not with my mom. They said there were four victims all together (males, ages 14, 13, 13 and 8).'" *Id.* "After further prompting, . . . Jones stated, 'Nothing happened!'" *Id.* Boyd also asked Jones to describe his "[s]exual [h]istory," *id.*, but she "did not ask [him] about his sexual orientation." Boyd Aff. ¶ 16. Harrell did not ask Jones about his sexual orientation either. Harrell Aff. ¶ 9. "Jones volunteered his sexual orientation," Boyd Aff. ¶ 16; Harrell Aff. ¶ 9, when telling them about a past romantic relationship. *See* Boyd Aff. Ex. A, ECF No. 24-3, at 13 ("Jones reported that his longest relationship lasted for 4–5 years. He stated, 'We were both bisexual. We enjoyed the lifestyle

and participated in group actions. I've always enjoyed a little flavor. You don't always eat at the same restaurant all the time.'").

Boyd then asked Jones about the "[c]urrent [s]ituation," which her contemporaneous notes describe as Jones "ordering and attempting to receive an abundance of commercial photos of persons who appeared to be minor males" and having in his possession "[o]ver 50+ commercial photos (nude and seminude) . . . of individuals who appeared to be minor males," including one photo of two such individuals "engaging in a sexual act." Boyd Aff. Ex. A, ECF No. 24-3, at 13; *accord* Boyd Aff. ¶¶ 14–15. She asked why he had "so many photos (to include ordering the photos)" in his possession. Boyd Aff. Ex. A, ECF No. 24-3, at 13; *accord* Boyd Aff. ¶ 14. According to Boyd's notes, Jones responded: "'I saw a flier and a row of pictures. I questioned one of the photos about the age of the model and wrote to Pineapple Express to verify that all the models were over 18. Then I placed an order.'" Boyd Aff. Ex. A, ECF No. 24-3, at 13. "After prompting," he explained: "'Another inmate gave me about 5–6 photos who looked under age. I didn't order those. I just put them in a photo album.'" *Id.* She also asked why he had these particular photos. *See* Boyd Aff. Ex. A, ECF No. 24-3, at 13; Boyd Aff. ¶ 15. According to Boyd's notes, Jones responded: "'People get uncomfortable looking at the human form. When you have these photos in prison, there is no conflict like getting caught looking at other men. I enjoy the human form." Boyd Aff. Ex. A, ECF No. 24-3, at 13. "After prompting," he explained, "'I like to fantasize about who they were and what they were like. I like to profile them. The purpose is for sexual fantasies. It's a luxury I allow myself to have from time to time.'" *Id.*

From Boyd's perspective, "Jones appear[ed] to possess offense related thoughts and behaviors." *Id.* at 12. "Based on [her] review of the materials, Jones's criminal history[,] and the evaluation process (including [her] interview with him), [she] determined that an [IRP] would

21

need to be implemented for him." Boyd Aff. ¶ 12; *see* Harrell Aff. ¶ 10. "An inmate's sexual orientation has no bearing on whether or not an IRP is put into place for the inmate." Harrell Aff. ¶ 10. The terms of each inmate's IRP are "determined by th[at] inmate's offense related behaviors." *Id.*

Boyd prepared Jones's written IRP on May 11, 2021. *See* Boyd Aff. ¶ 12 (citing Boyd Aff. Ex. A (May 11, 2021), ECF No. 23-3, at 10–11).[4] Its specific "provisions and prohibitions" are "based on [her] clinical and professional judgment regarding [his] rehabilitative needs." *Id.* ¶ 32. For example, "Jones's IRP refers to 'males' because" the only "offense related" materials that staff found in Jones's property were those that depicted "underage males or those appearing to be underage. [They] found nothing inappropriate regarding females." *Id.* ¶ 20. "In [Boyd's] experience, sex offenders who are preoccupied with viewing, or who frequently collect or possess images that they find arousing or reminiscent of their criminal behavior are less likely to succeed in rehabilitation." *Id.* ¶ 29. Jones committed sex crimes "against underage male victims; that is why his IRP is specific to publications of underage males or publications of males acting in a sexual manner." Harrell Aff. ¶ 12; *accord* Boyd Aff. ¶ 30 ("The images do not necessarily have to be what is typically considered 'pornographic' or 'sexually arousing.' For example, inmates who have offended against minors, such as Jones, the collection and possession of seemingly innocent images of children even when clothed and engaged in seemingly innocuous activities . . . tend to indicate unhealthy thoughts and behaviors and an unwillingness to adapt their sexual impulses into more healthy, socially acceptable, lawful behaviors.").

Boyd "explained Jones's IRP to him and told him that he did not have to sign it. [She] further told him that not signing it would have no impact on its implementation and it would still

---

[4] This document, ECF No. 24-3, at 10–11, is a copy of the signed IRP that Jones attached to his verified complaint as Exhibit 11, ECF No. 1-1, at 15–16. Its material terms are reproduced in the previous section.

go into effect. Jones signed his IRP on May 11, 2021." Boyd Aff. ¶ 26; *accord* Harrell Aff. ¶ 11

("Ms. Boyd explained the IRP to Jones and told him that he was not required to sign the IRP but

that it would still be implemented even without his signature. Jones signed his IRP on May 11,

2021."). Boyd and Harrell also signed. Boyd Aff. ¶ 26; *see* Boyd Aff. Ex. A (May 11, 2021),

ECF No. 23-3, at 10–11. From their perspective, "Jones was not coerced or threatened into

signing the IRP. If an inmate refuses to sign his IRP, there is no penalty." Boyd Aff. ¶ 26.

According to Harrell, "[a]n inmate has the right to decline signing the IRP, but he does not have

the right to decline his participation pursuant to an IRP. [His] participation is required if an IRP

is put into place." Harrell Aff. ¶ 10. Harrell and Boyd told Jones to submit a Request for Services

form if he had any "questions or concerns regarding the IRP." *See* Boyd Aff. Ex. A (May 11,

2021), ECF No. 24-3, at 12. They also noted Jones "ha[d] already demonstrated the ability to

question some images" that might have depicted underage models, and "advised [him] to be

mindful of appearances should he choose to place a commercial photo order." *Id.*

Boyd attests that Jones's "sexual orientation had no bearing in the implementation or

creation of his IRP . . . . and is not a factor regarding his treatment." Boyd Aff. ¶ 16; *see also id.*

¶ 27 ("The implementation of Jones's IRP was not based in any way on his sexual orientation.").

She also asserts that "[t]he confiscation of Jones's photos and materials from either the mailroom

[in April 2021] or during cell searches [in April and May 2021] was not done based on his sexual

orientation." *Id.* Harrell's affidavit does not address whether Jones's sexual orientation played

any role in either her initial decision to confiscate his materials before the May 11 meeting, *e.g.*,

Boyd Aff. ¶¶ 8–11; Harrell Aff. ¶ 6, or her subsequent decision to seize the 57 pages of

thumbnails, 119 commercial photos, and three personal photos by retroactively designating them

"Against IRP," Dillman Aff. Ex. A (May 20, 2021), ECF No. 24-2, at 19. *See generally* Harrell Aff. ¶¶ 6, 9–13.

GRCC's Warden responded to Jones's regular grievance in June 2021. Dillman Aff. Ex. A, ECF No. 24-2, at 8. His Level I response states, "According to[] Ms. Harrell, Mental Health, Mr. Jones has been informed of the terms of his IRP . . . and why it is not affected by sexual orientation. Mr. Harrell [sic] also explained to Mr. Jones why his photos and thumbnail pictures were confiscated and not returned even if they have a disclaimer." *Id.* The Warden concluded that Jones's grievance was "unfounded" because VDOC OP 730.2, *Mental Health & Wellness Services: Screening Assessment & Classification*, was "correctly applied." *Id.*; *see generally* Dillman Aff. ¶¶ 7–8 (summarizing the same). Jones appealed that response to Level II of VDOC's Inmate Grievance Procedure. *See* Dillman Aff. ¶ 9.

Defendant Jeffrey Dillman is VDOC's Chief of Health Services Operations. Dillman Aff. ¶ 1. His job duties include "responding to inmate grievances at Level II of the Inmate Grievance Procedure for the Director of Health Services." *Id.* ¶ 4. "In answering Level II grievances, the Registered Nurse ('RN') researches the issues raised in the grievances and provides the verbiage for [Dillman's] review and signature." *Id.* ¶ 4. Dillman relies "on the professional judgment of doctors and mental health care professionals and do[es] not substitute [his] own judgment for their professional opinions concerning an inmate's treatment." *Id.* ¶ 5. His "job is primarily one of administration" by "ensur[ing] compliance with the medical and mental health operating procedures and policies at the VDOC level." *Id.*

In Jones's case, Dillman "did not have any involvement in determining what, if any, photos/books/materials would be confiscated from him, nor was [Dillman] involved in the implementation" of Jones's IRP in May 2021. *Id.* ¶ 6. His "review of [Jones's] requests and

complaints and other documents that he submitted with his grievance appeal was [Dillman's]

only involvement in the matter." *Id.* ¶ 11. This was "a purely administrative" role. *Id.* Dillman

responded to Jones's Level II grievance in August 2021. *See id.* ¶ 9. In that response, he "advised

Jones that [he] had read requests and complaints, reviewed the Pineapple Express disclaimer[

and] his Individualized Rehabilitation Plan[,] and consulted with the Sex Offender Services

Management Team. Based on the information provided and further investigation, [Dillman]

concurred with the Level I response and determined that [Jones's] grievance was unfounded."

*Id.*; *accord* Dillman Aff. Ex. A, ECF No. 24-2, at 20 (citing Va. Dep't of Corrs., OP 730.2,

*Mental Health & Wellness Services: Screening Assessment & Classification*). Dillman further

explained that Jones's "photos were confiscated and disapproved because they violated the terms

of his Individualized Rehabilitation Plan." Dillman Aff. ¶ 9; *see* Dillman Aff. Ex. A, ECF No.

24-2, at 20 ("The photos were confiscated and are disapproved because they violate the terms of

your Individualized Rehabilitation Plan."). He also "stated that: 'Although they may be

technically pictures of adults, they appear to be underage and some are sexual in nature and

therefore have been determined to be detrimental to [Jones's] treatment and recovery.'" Dillman

Aff. ¶ 9 (quoting Dillman Aff. Ex. A, ECF No. 24-2, at 20). Dillman also encouraged Jones to

"make sure that any photos" he orders in the future "are clearly and unquestionably adult

subjects." *Id.* He did not address Jones's grievance that the IRP's terms discriminated against

him on the basis of his sexual orientation. *See id.*

## IV. Discussion

A.    *Claims Against Jeffrey Dillman*

Jones faults Dillman for his role in determining that Jones's grievance appeal challenging

Boyd's drafting and implementation of his IRP and Harrell's confiscation of his photographs was

25

"unfounded." *See generally* Compl. 6–7 (Count I); *id.* at 8–9 (Count II). Dillman seeks summary judgment on both claims based on his lack of personal involvement in the underlying alleged constitutional violation. *See* Defs.' Br. in Supp. 8–9. Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Thus, to state any individual-capacity claim under § 1983, a plaintiff must plead facts supporting a reasonable inference that each defendant was "personal[ly] involve[d]" in the underlying alleged constitutional violation. *Iqbal*, 556 U.S. at 676; *Sawyer v. S.W. of Va. Reg'l Jail*, No. 7:20cv510, 2020 WL 5371467, at *1 (W.D. Va. Sept. 8, 2020) (citing *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017)); *Delk v. Moran*, No. 7:16cv554, 2018 WL 1513296, at *5 (W.D. Va. Mar. 27, 2018) (citing *Trulock*, 275 F.3d at 402). A complaint that does not plausibly allege a defendant's personal involvement in the underlying constitutional violation fails to state a § 1983 claim against that defendant. *Iqbal*, 556 U.S. at 676; *Sawyer*, 2020 WL 5371467, at *2.

In the prison context, allegations that a defendant-prison administrator simply reviewed or responded to the plaintiff's grievance describing *other* defendants' allegedly unconstitutional conduct typically is not enough to demonstrate the administrator's personal involvement in the underlying constitutional violation. *See, e.g.*, *Agee v. Kiser*, No. 7:17cv537, 2019 WL 1247518, at *6 (W.D. Va. Mar. 18, 2018) ("[T]here mere fact that [defendants] drafted and signed the Level I response [to Agee's grievance] does not establish the type of personal involvement required to state a claim for relief under § 1983." (quotation marks omitted)); *Brown v. Va. Dep't of Corrs.*, No. 6:07cv33, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009) ("[T]here is no liability under § 1983 for a prison administrator's response to a grievance or appeal."). Here, Dillman's affidavit shows he was not personally involved in the alleged misconduct underlying either of Jones's § 1983 claims against Boyd and Harrell and that his only personal connection to this case

was that he reviewed Jones's grievance appeal and issued the Level II response concluding that

Boyd and Harrell followed VDOC OP 735.2. *See* Defs.' Br. in Supp. 6–7 (citing Dillman Aff. ¶¶

5–11); Fed. R. Civ. P. 56(c)(1); *cf. Williamson v. Stirling*, 912 F.3d 154, 172 (4th Cir. 2018)

(explaining that defendant-jail administrator's personal attestation that "[s]he signed off on the

handling of [pretrial detainee's] infractions while he was in" the local jail's custody, but "that she

had 'no involvement in the request or execution of placing' [him] in [state] custody as a

safekeeper," established her lack of personal involvement in underlying alleged due process

violation). Jones's verified complaint does not contain any allegations, "based on [his] personal

knowledge," disputing Dillman's sworn statements concerning those material facts, *Williamson*,

912 F.3d at 172. *See generally* Compl. 6–9.[5] Thus, Dillman is entitled to judgment as a matter of

law on Jones's First Amendment claim (Count I) and his Equal Protection Clause claim (Count

II) because Dillman "lacked sufficient personal involvement in the alleged constitutional

deprivations," *Williamson*, 912 F.3d at 172. *See, e.g.*, *Strickland v. Militana*, No. 7:12cv5, 2013

WL 1951862, at *4–6, *9–10 (W.D. Va. Mar. 26, 2013) (defendant-prison administrator's

uncontradicted affidavit stating that he was not involved in plaintiff's underlying medical care,

and merely responded to his grievances, entitled that defendant to summary judgment on

plaintiff's § 1983 claim alleging that inadequate medical care violated his Eighth Amendment

right), *adopted*, 2012 WL 1952091 (W.D. Va. May 9, 2013). He will be dismissed from the

action.

B.    *Count I: First Amendment Violation*

As noted, Count I asserts § 1983 claims that Boyd and Harrell violated Jones's First

Amendment right to free speech—including his right to receive commercially available

---

[5] Jones did not submit any additional evidence in response to Defendants' motion for summary judgment.
*See generally* Pl.'s Br. in Opp'n 1–16.

photographs and publications—while incarcerated. Harrell and Boyd did not recognize those claims and therefore did not move for summary judgment on them. Fed. R. Civ. P. 56(a).

Instead, Harrell and Boyd construed Count I as presenting "a Fourteenth Amendment facial vagueness challenge against [VDOC] OP 735.2, and/or the concept of IRPs." Defs.' Br. in Supp. 10 (footnotes omitted); *see id.* at 10–11 (applying Due Process Clause principles). Jones's complaint does not contain those claims. A federal court may grant summary judgment only on a "claim or defense" (or part thereof) asserted in the pleadings, Fed. R. Civ. P. 56(a). *Cf. Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 728 (4th Cir. 2021) (interpreting the phrase "on a claim or defense" in Fed. R. Civ. P. 50(a)(1)(B)). "[N]o federal court has ever recognized an exception to this principle," *id.*, by granting summary judgment on a claim that the plaintiff did not include in his complaint. *See, e.g.*, *Hudson v. Air Line Pilots Ass'n Int'l*, 415 B.R. 653, 660 (N.D. Ill. 2009) (denying summary judgment to an intervenor because plaintiffs had not brought any claims against it); *Civix-DDI, LLC v. Cellco P'ship*, 387 F. Supp. 2d 869, 881 (N.D. Ill. 2005) (ruling that parties are not entitled to summary judgment on unasserted claims). "Nor would such an exception make sense, as the civil plaintiff is the master of his complaint and determines the claims to bring." *Steves & Sons*, 988 F.3d at 728 (cleaned up). Accordingly, Defendants' motion will be denied to the extent that it seeks summary judgment on Count I.

C.   *Count II: Equal Protection Clause Violation*

In Count II, Jones alleges that Harrell and Boyd discriminated against him based on his sexual orientation (bisexual) because his IRP forbids him to view or possess images that portray male models in a certain way. Compl. 10; *see generally id.* at 8–11. This claim is properly analyzed under the Fourteenth Amendment's Equal Protection Clause. *See, e.g.*, *Veney*, 293 F.3d at 729. The Equal Protection Clause embodies the principle that "all persons similarly situated

28

should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "To

succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated

differently from others with whom he is similarly situated and that the unequal treatment was the

result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654

(4th Cir. 2001). "Individuals are similarly situated for [e]qual [p]rotection purposes if they are 'in

all relevant respects alike.'" *Harrison v. Austin*, 597 F. Supp. 3d 884, 905 (E.D. Va. 2022)

(quoting *Fauconier v. Clarke*, 966 F.3d 265, 277 (4th Cir. 2020)). To satisfy the intent element,

the plaintiff must show "that 'an invidious discriminatory purpose was a motivating factor' in the

relevant decision." *Dep't of Homeland Sec. v. Regents of the Univ. of Calif.*, 140 S. Ct. 1891,

1915 (2020) (quoting *Arlington Height v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977)).

     Once the plaintiff demonstrates intentional discrimination, the court will determine if the

unequal treatment "can be justified under the requisite level of scrutiny." *Morrison*, 239 F.3d at

654. Outside the prison context, the applicable level of scrutiny depends on whether the

intentionally unequal treatment "involves a fundamental right or a suspect class." *See Veney*, 293

F.3d at 731. For example, Jones's claim that Boyd and Harrell discriminated against him "on the

basis of [his] sexual preference" would be "subject to rational basis review" outside the prison

context. *Id.* (citing *Romer v. Evans*, 517 U.S. 620, 630–31 (1996)). "When equal protection

challenges arise in a prison context, however, courts must adjust the level of scrutiny to ensure

that prison officials are afforded the necessary discretion to operate their facilities in a safe and

secure manner." *Id.* at 732. "In a prison context, therefore, [courts] must determine whether the

disparate treatment is 'reasonably related to [any] legitimate penological interests.'" *Id.* (quoting

*Shaw*, 532 U.S. at 225). If it is, there is no Equal Protection Clause violation. *See id.*

*

Defendants' brief recognized Count II's equal-protection component, Defs.' Br. in Supp. 11–12, but broadly construed the claim as challenging VDOC OP 735.2 "as applied" to Jones "being *issued an IRP* because it was discriminatorily based on his sexual orientation," *id.* at 11 (emphasis added). Jones's real concern is the allegedly discriminatory nature of *the IRP* that Boyd and Harrell wrote and implemented for him in May 2021; he does not assert that VDOC OP 732.5 itself is unconstitutional "as applied" to him. Nonetheless, Boyd carried her initial burden to show there is no genuine dispute that Jones's sexual orientation simply played no role in her decision to put him on an IRP that prohibits him from viewing or possessing images that portray male subjects in certain ways. Defs.' Br. in Supp. 13 (citing Boyd Aff. ¶¶ 16, 32); Fed. R. Civ. P. 56(c)(3). To survive summary judgment, Jones "must put forward specific, non-conclusory factual allegations," based upon his personal knowledge, which could persuade a reasonable jury that Boyd did, in fact, have an "improper motive." *Pronin v. Johnson*, 628 F. App'x 160, 164 (4th Cir. 2015) (citing *Williams v. Hansen*, 326 F.3d 569, 584 (4th Cir. 2003)). He cannot do so. *See* Fed. R. Civ. P. 56(e)(2)–(3).

To start, Boyd's initial determination that an IRP "would need to be implemented for" Jones was "[b]ased on [her] review of the materials" seized from his cell and incoming mail, his "criminal history[,] and the evaluation process (including [her] interview with him)" on May 11, 2021. Boyd Aff. ¶ 12. The materials that Boyd reviewed included "over 50 plus commercial photos (nude and seminude) of individuals who appeared to be minor males," including one photo of two such individuals "engaging in a sexual act," and "a plethora of thumbnails from Pineapple Express." Boyd Aff. Ex. A, Mental Health Progress Notes (May 11, 2021), ECF No. 24-3, at 13; *see Pronin*, 628 F. App'x at 164–65 (explaining that "[i]nvidious discriminatory purpose" can be shown by "circumstantial [or] direct evidence of intent," including "the specific

30

sequence of events leading up to the particular decision being challenged . . . and contemporary statements by the decisionmaker"); Fed. R. Evid. 803(4)(A)–(B). Jones admits that he possessed more than 100 photos of male models, Compl. 5, and that he "had more Twink [photos] than others," Compl. Ex. 13, Pineapple Pictures Volumes (July 13, 2019), ECF No. 1-1, at 18. "Twink" refers to "[y]oung skinny smooth guys all over the age of 18." Compl. Ex. 13, ECF No. 1-1, at 18. From Boyd's perspective, at least half of Jones's photos depicted males who looked younger than 18 years old. Boyd Aff. ¶ 11; Boyd Aff. Ex. A, ECF No. 24-3, at 13.

Regarding Jones's criminal history, his "official VDOC records" show that he is a registered sex-offender who was convicted on multiple counts of forcible sodomy, aggravated sexual battery, and taking indecent liberties with a child. Boyd Aff. ¶ 6; Harrell Aff. ¶ 12; *see* Fed. R. Evid. 803(6), (8). He committed those crimes against "underage male victims." Harrell Aff. ¶ 12. During the May 11, 2021 clinical interview, Boyd wrote that "Jones appear[ed] to possess offense related thoughts and behaviors." Boyd Aff. Ex. A, ECF No. 24-3, at 12; *see Pronin*, 628 F. App'x at 164–65; Fed. R. Evid. 803(4)(A)–(B). Jones said he had these photos because, "I like to fantasize about who they were and what they were like. I like to profile them. The purpose is for sexual fantasies." Boyd Aff. Ex. A, ECF No. 24-3, at 12; *see Pronin*, 628 F. App'x at 164–65. Nothing in Jones's verified complaint undermines the factual accuracy of Boyd's contemporaneous treatment notes. *See, e.g.*, Compl. 4 ("At the meeting, I was asked why I had the photos and what they were for. I informed them I am bisexual and used the photos as a means of escape, mentally, from prison."); *id.* at 8 ("I was asked why I had the photos and I informed them of the fact that I am bisexual."); *id.* at 10 ("I use the photos to escape and travel mentally by wondering about the person in the photo and the surroundings they are in.").

Additionally, Harrell attested that the terms of each inmate's IRP are "determined by the inmate's offense related behaviors." Harrell Aff. ¶ 10. Jones committed sex crimes "against underage male victims; that is why his IRP is specific to publications of underage males or publications of males acting in a sexual manner." *Id.* ¶ 12. Boyd attested that the specific "provisions and prohibitions" that she included in Jones's IRP were "based on [her] clinical and professional judgment regarding [his] rehabilitative needs." Boyd Aff. ¶ 32. For example, "Jones's IRP refers to 'males' because" the only "offense related" materials that staff found in Jones's property were those that depicted "underage males or those appearing to be underage. [They] found nothing inappropriate regarding females." *Id.* ¶ 20. Jones can only speculate that his bisexuality played any role in Boyd's decisions about his IRP. *See* Compl. 6 ("This plan is nothing but a tool used to further a prejudice or discrimination and Ms. Harrell and Ms. Boyd are actually using it against me with no compromise to include my sexual orientation."); *id.* at 10–11 ("Ms. Harrell and Ms. Boyd are simply denying me my right to express and live within my individual identity and sexual orientation."). Boyd, however, personally attested that those decisions were "not based in any way on [Jones's] sexual orientation." Boyd Aff. ¶ 27. They were based on her clinical judgment that he seemed "hyper-focused on collecting and possessing images" directly related to the sex offenses he committed against underage males. *Id.* ¶ 29. Jones cannot put forth any admissible "evidence of discriminatory intent, aside from the bare fact," *Pronin*, 628 F. App'x at 165, that he is bisexual and he happened to mention his sexual orientation to Boyd during their May 11 meeting. *See* Compl. 4, 8; Boyd Aff. ¶¶ 16, 31. Accordingly, Boyd is entitled to judgment as a matter of law on Jones's equal protection claim against her. *See Pronin*, 628 F. App'x at 165; Fed. R. Civ. P. 56(a).

Conversely, Harrell's affidavit does not address whether Jones's sexual orientation played any role in either her initial decision to confiscate his materials before the May 11 meeting, *e.g.*, Harrell Aff. ¶ 6; Boyd Aff. ¶¶ 8–11; Compl. 3, or her subsequent decision to "seiz[e]" 57 pages of thumbnails, 119 commercial photos, and three personal photos by retroactively designating them "Against [his] IRP," Dillman Aff. Ex. A (May 20, 2021), ECF No. 24-2, at 19. *See generally* Harrell Aff. ¶¶ 6, 9–13. Nonetheless, I agree that Jones's complaint fails to state an equal protection claim against Harrell. *See* Defs.' Br. in Supp. 12–13 (citing *Iqbal*; 556 U.S. at 677–78; *Desper*, 1 F.4th at 248–49); *see also* 28 U.S.C. § 1915A(b)(1). To state such a claim, Jones's complaint must at least contain well-pleaded factual content, accepted as true and viewed in his favor, supporting a reasonable inference that Harrell purposefully treated Jones differently than others with whom he is similarly situated. *See Logan v. Chandler*, No. 7:19cv590, 2021 WL 519902, at *2 (W.D. Va. Feb. 11, 2021). His "allegations do not establish an equal protection violation, most notably because he fails to identify any other similarly situated person or persons" whom Harrell treated differently. *Id.*

"Individuals are similarly situated for [e]qual [p]rotection purposes if they are 'in *all relevant respects* alike.'" *Harrison*, 597 F. Supp. 3d at 905 (quoting *Fauconier*, 966 F.3d at 277) (emphasis added). Here, Jones asserts that Harrell treated him differently than "the majority of incarcerated citizens" who are allowed "to purchase and own materials, photographs in line with [their] sexual orientation." Compl. 1; *see also id.* at 5–6 ("I am solidly trapped and not allowed to pursue my life as bisexual in the capacity to own materials that any other incarcerated citizen can."). His attempt to compare himself to "the majority of incarcerated" persons who enjoy broader access to materials "in line with [their] sexual orientation," Compl. 1, fails because "people . . . convicted of different crimes are not similarly situated to each other" for equal

protection purposes. *Vanderall v. Virginia*, No. 1:05cv1341, 2006 WL 6093879, at *7 (E.D. Va. Aug. 9, 2006) (citing *United States v. Pierce*, 409 F.3d 228, 235 (4th Cir. 2005)). At the time Harrell seized Jones's materials, he was a registered sex-offender who had been convicted of multiple offenses, including taking indecent liberties with a child. *See, e.g.*, *Commonwealth v. Wesley R. Jones*, Nos. CR98-104-00, CR98-104-01, CR98-104-11, 98-282-02 (Campbell Cnty. Cir. Ct. Mar. 24, 1999). His "complaint does not purport to allege that he was treated differently from any other inmate with a similar [criminal] history," *Desper*, 1 F.4th at 249 (emphasis omitted), much less one who ordered dozens of photographs depicting "seductive" male models who arguably looked like minors, Compl. 4–5. On the contrary, Jones appears to allege that "anyone *with like* criminal charges to [his] are given *the same plan* denying them photographs" with sexually suggestive content. Compl. 6 (emphasis added).

Jones's complaint also does not contain any "facts [to] bolster [his] claim" that Harrell acted with "improper motive," *Trulock*, 275 F.3d at 506, when she confiscated his photographs. *See generally* Compl. 3–11. His bare-bones assertions that Harrell treated Jones differently because he is openly bisexual, *see id.*, "are far too conclusory" to support a reasonable inference that Harrell intentionally discriminated against Jones. *Anderson v. Roop*, No. 7:19cv155, 2019 WL 5964569, at *2 (W.D. Va. Nov. 13, 2019). Accordingly, Jones's equal protection claim against Harrell will be dismissed with prejudice. *See Desper*, 1 F.4th at 249.

D.   *Damages for Mental or Emotional Injury*

Finally, Defendants ask the Court to "dismiss Jones's request for compensation for mental and emotional damages" under 42 U.S.C. § 1997e(e) because "there is no physical injury to speak of in this case." Defs.' Br. in Supp. 14. As relevant here, § 1997e(e) bars a prisoner from recovering compensatory damages "*for mental or emotional injury* suffered while in

custody without a prior showing of physical injury." *Wilcox*, 877 F.3d at 169 (quoting 42 U.S.C. § 1997e(e)). Defendants assert that, "[w]ithout showing a prior physical injury, Jones is not entitled to compensation for mental or emotional damages." Defs.' Br. in Supp. 14 (citing § 1997e(e)). They do not cite any caselaw to support this argument. *See id.* at 13–14.

While Jones's pro se complaint does seek "$90,000.00 for mental, emotional damages," Compl. 12, his demand for relief can fairly be construed to mean monetary "damages generally," which would "encompass[] a request for nominal damages," *Wilcox*, 877 F.3d at 169. "Under common law, courts can vindicate absolute [constitutional] rights through the award of a nominal sum of money, even without proof of actual injury. In doing so, 'the law recognizes the importance to organized society that those rights be scrupulously observed.'" *Clark v. Coleman*, 448 F. Supp. 3d 559, 578–79 (W.D. Va. 2020) (quoting *Carey v. Piphus*, 435 U.S. 247, 266 (1978)). Moreover, the Fourth Circuit has held "that monetary damages are available under [§ 1997e(e)] for inmates asserting 'deprivations of First Amendment rights' independent of any 'physical, mental, or emotional injury.'" *Brown v. Prince George's Cty.*, No. 19cv1988, 2022 WL 1002135, at *3 (D. Md. Mar. 31, 2022) (quoting *Wilcox*, 877 F.3d at 169–70). In Count I, Jones asserts that Harrell and Boyd violated his First Amendment rights to receive speech while incarcerated. Under *Wilcox*, he may still "be entitled to compensatory damages for the 'injury to [his] protected [F]irst [A]mendment interest.'" *Harvey v. Witlock*, No. 7:18cv97, 2021 WL 3852731, at *11 n.14 (W.D. Va. Aug. 27, 2021) (quoting *Wilcox*, 877 F.3d at 169–70). Defendants do not address this binding Fourth Circuit authority. Accordingly, they have not "show[n]" that they are entitled to judgment as a matter of law on Jones's request for compensatory damages. Fed. R. Civ. P. 56(a).

V. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment, ECF No. 23, will be granted in part and denied in part. Specifically, their motion will be **granted** with respect to Jones's § 1983 claims against Defendant Jeffery Dillman in Count I and Count II, and Dillman will be dismissed as a defendant from the action. Fed. R. Civ. P. 56(a). Their motion will be **denied** with respect to Jones's request for compensatory damages, 42 U.S.C. § 1997e(e). *See* Fed. R. Civ. P. 56(a).

As to Jones's § 1983 claims that Defendants Shelby Harrell and Heather Boyd violated his rights under the Equal Protection Clause (Count II), Defendants' motion will be **granted in part** with respect to Boyd, and **denied in part** with respect to Harrell. Fed. R. Civ. P. 56(e)(3). Nonetheless, Count II will be dismissed with prejudice because Jones's complaint fails to state an equal protection claim against Harrell. 28 U.S.C. § 1915A(b)(1). Finally, Defendants' motion will be **denied** with respect to Count I. *See* Fed. R. Civ. P. 56(a). Defendants Harrell and Boyd will be directed to file a motion for summary judgment addressing Jones's § 1983 claims that each Defendant personally violated his First Amendment right to receive commercial photographs while incarcerated. *See* Fed. R. Civ. P. 56(b), (e)(4). A separate Order shall enter.

ENTER: March 22, 2024

Joel C. Hoppe
U.S. Magistrate Judge

36